## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VIRGINIA COLE, individually and on behalf of all others similarly situated, | : Case No. 2:24-cv-01173 <br> : <br> : |
| Plaintiff, | : **COMPLAINT – CLASS ACTION** <br> : |
| v. | : <br> : **JURY DEMAND** |
| AFFLUENT ADS LLC dba LEADNOMICS and RAPID RESPONSE MARKETING, A NEVADA LIMITED LIABILITY COMPANY, | : <br> : <br> : <br> : <br> : |
| Defendants. | : <br> : / |

Plaintiff Virginia Cole ("Plaintiff"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of her counsel, and on information and belief, as follows:

## NATURE OF ACTION

1. This case involves a campaign by Defendant Affluent Ads LLC dba Leadnomics ("Leadnomics"), who retained a third party, Defendant Rapid Response Marketing, a Nevada Limited Liability Company ("Rapid Response" and, together with Leadnomics, "Defendants"), to make telemarketing calls on Leadnomics' behalf. Defendants made telemarketing calls by contacting numbers on the National Do Not Call Registry in plain violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").

2. The recipients of Defendants' illegal calls, which include Plaintiff and the proposed class, are entitled to damages under the TCPA, and because the technology used by Defendants makes calls *en masse*, the appropriate vehicle for their recovery is a class action lawsuit.

## PARTIES

3. Plaintiff Virginia Cole is an individual.

4. Defendant Leadnomics is a limited liability company located in this District.

5. Defendant Rapid Response is a Nevada limited liability company.

## JURISDICTION AND VENUE

6. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

7. This Court has personal jurisdiction over Leadnomics because the company's principal place of business is located in this District.  This Court has personal jurisdiction over Rapid Response because it makes or authorizes calls into Pennsylvania and it contracted with Leadnomics to perform telemarketing services in this District.

8. Venue is proper pursuant to 28 U.S.C. § 1391 because Leadnomics contracted with Rapid Response to perform telemarketing services in this District and Leadnomics' principal place of business is located in this District.

## TCPA BACKGROUND

The National Do Not Call Registry

9. The TCPA prohibits making multiple telemarketing calls to a residential telephone number that has previously been registered on the National Do Not Call Registry.  *See* 47 U.S.C. § 227(c)(5).

10. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

11. A listing on the National Do Not Call Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

## FACTUAL ALLEGATIONS

12. Defendants are "persons" as the term is defined by 47 U.S.C. § 153(39).

13. Plaintiff's telephone number, 615-XXX-8353, is Plaintiff's residential telephone line.

14. That number is used for residential purposes and is used for personal purposes.

15. That number is not associated with a business.

16. Plaintiff registered her number on the National Do Not Call Registry on April 5, 2023.

17. Despite this, Plaintiff received telemarketing calls from Rapid Response, or a call center on its behalf, working with Leadnomics, including on at least May 9 and May 10 (twice), 2023.

18. Indicative of the *en masse* calling, Rapid Response used spoofed local Caller ID numbers.

19. This included numbers other individuals have reported as spam on a robocall-blocking app. *See* ROBOKILLER, https://lookup.robokiller.com/search?q=615-486-6872; https://lookup.robokiller.com/search?q=615-551-4092 (last visited Mar. 5, 2023).

20. All of the calls followed the same scripted sales pitch.

21. The telemarketer informed Plaintiff that they were calling to offer burial insurance.

22. On both the call on May 9 and the first call on May 10, Plaintiff informed the caller that she was not interested.

23. However, the calls kept being made.

24. Plaintiff answered the last telemarketing call that was sent to her.

25. This telemarketing call began like the others made by Rapid Response's telemarketer.

26. The telemarketer from Rapid Response informed Plaintiff that they were calling to offer burial insurance.

27. During this call, Plaintiff answered more questions, including her zip code.

28. Plaintiff was then transferred during the call to Anthony Talbert, who was identified as an employee for the client that Leadnomics was directed to send calls to as part of their lead generation business.

29. Mr. Talbert then continued to offer burial insurance that was being sold by Leadnomics.

30. The calls were not necessitated by an emergency.

31. Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendants because their privacy has been violated and they were annoyed and harassed. Plaintiff and the Class members were also harmed by use of their telephone power and network bandwidth and the intrusion on their telephones that occupied them from receiving legitimate communications.

**LEADNOMICS' LIABILITY FOR RAPID RESPONSE'S CALLING**

32. For more than twenty years, the Federal Communication Commission ("FCC") has explained that its "rules generally establish that the party on whose behalf a solicitation is

made bears ultimate responsibility for any violations." *In re Rules and Reguls. Implementing the Tel. Consumer Prot. Act*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

33. In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

34. The FCC has instructed that sellers such as Leadnomics may not avoid liability by outsourcing telemarketing to third parties, such as Rapid Response:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) ("May 2013 FCC Ruling") (footnotes and alteration marks omitted).

35. In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at 6574 ¶ 1.

36. Leadnomics is liable for telemarketing calls placed by Rapid Response to generate customers for Leadnomics, including Plaintiff.

37. Leadnomics was interested in hiring a lead generator that could have contact with potential customers and only sell them the interested ones.

38. To do so, it hired Rapid Response.

39. Leadnomics controlled the day-to-day activities by providing the specific criteria for the leads it would accept.

40. As such, Leadnomics controlled the content of Rapid Response's telemarketing.

41. As such, it knowingly ratified Rapid Response's conduct.

42. Leadnomics also ratified Rapid Response's conduct because, with the ability to know that the number they called was on the National Do Not Call Registry, Leadnomics accepted Plaintiff's lead.

43. Leadnomics accepted Plaintiff's lead and then utilized it for a benefit by getting paid on the lead that was sent.

44. The May 2013 FCC Ruling holds that called parties may obtain "evidence of these kinds of relationships … through discovery, if they are not independently privy to such information." *In re DISH Network*, 28 FCC Rcd. at 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

## CLASS ACTION ALLEGATIONS

45. Plaintiff brings this action on behalf of herself and the following class (the "Class") pursuant to Federal Rule of Civil Procedure 23:

> **Telephone Consumer Protection Act Do Not Call Registry Class:** All persons in the United States (1) whose telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing calls from or on

behalf of Defendants (3) within a 12-month period (4) from the four years prior to the filing of the Complaint through the date of trial.

46. Defendants and their employees or agents are excluded from the Class. Plaintiff reserves the right to modify or amend the Class definition, as appropriate, during the course of this litigation.

47. Plaintiff brings all claims in this action individually and on behalf of all Class members against Defendants.

## Numerosity

48. Members of the Class are so numerous that their individual joinder is impracticable.

49. On information and belief, based on the technology used to call Plaintiff, which is used to make calls *en masse*, members of the Class number in the thousands.

50. The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery.

51. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants.

## Commonality

52. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.

53. Common legal and factual questions include, but are not limited to, whether Defendants have violated the TCPA and whether Class members are entitled to actual and/or statutory damages for the aforementioned violations.

### Typicality

54. The claims of the named Plaintiff are typical of the claims of the Class because the named Plaintiff, like all other Class members, received unsolicited telephonic sales calls from Defendants without giving them her consent to receive such calls.

### Adequacy of Representation

55. Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously.

56. The interests of Class members will be fairly and adequately protected by Plaintiff and her counsel.

### Superiority

57. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members.

58. Many of the Class members likely lack the ability and/or resources to undertake the burden and expense of individually prosecuting what may be a complex and extensive action to establish Defendants' liability.

59. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system.  This strain on the parties and the judicial system would be heightened in this case, given the complex legal and factual issues at play.

60. Individualized litigation also presents a potential for inconsistent or contradictory judgments.

61. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability.

62. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

**COUNT I**
**Violations of the Telephone Consumer Protection Act**
**47 U.S.C. § 227**
**On Behalf of Plaintiff and the Telephone Consumer Protection Act**
**Do Not Call Registry Class**

63. Plaintiff repeats and incorporates the allegations set forth in paragraphs 1 through 62 as if fully set forth herein.

64. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to Plaintiff and the Class despite their numbers being on the National Do Not Call Registry.

65. Defendants' violations were negligent, willful, or knowing.

66. As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of between $500 and $1,500 in damages for each and every call made.

67. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants from making telemarketing calls to numbers on the National Do Not Call Registry, except for emergency purposes, in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A. Injunctive relief prohibiting Defendants from calling telephone numbers advertising their goods or services, except for emergency purposes, to numbers on the National Do Not Call Registry in the future;

B. That the Court enter a judgment awarding Plaintiff and all Class members statutory damages of $500 for each violation of the TCPA and $1,500 for each knowing or willful violation;

C. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class; and

D. Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial as to all claims of the Complaint so triable.

Dated: March 19, 2024

Respectfully submitted,

**/s/ Joseph F. Murray**
Joseph F. Murray (327025)
Brian K. Murphy (*pro hac vice* to be filed)
Jonathan P. Misny (*pro hac vice* to be filed)
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH 43215
Telephone: 614.488.0400
Facsimile: 614.488.0401
E-mail: murray@mmmb.com
         murphy@mmmb.com
         misny@mmmb.com

Anthony I. Paronich (*pro hac vice* to be filed)
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

*Counsel for Plaintiff*